UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
:
ANNA MARIE SCORSONELLI,                                      :
:
                    Plaintiff,                  :  Civil Action No. 18-CV-4269 (JMF)
:
  -against-                                                  :
:
MADISON DENTISTRY, P.C., et al.,                             :
:
                    Defendants.                 :
:
------------------------------------------------------------ x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


Of Counsel and On the Brief:

    Frederic L. Lieberman, Esq.
    Karen Y. Bitar, Esq.
    Gary E. Hanna, Esq.


                SEYFARTH SHAW LLP
                  620 Eighth Avenue
                 New York, NY 10018
                TEL: (212) 218-5500

                      - and -

                HANNA LAW GROUP
                  8410 Third Avenue
              Brooklyn, New York 11209
                TEL: (718) 232-3001

             *Attorneys for Defendants*
    *Madison Dentistry, P.C. and Frank DiCicco*

# **TABLE OF CONTENTS**

Page

Table of Authorities ........................................................................................................................ ii

ARGUMENT .................................................................................................................................. 1

    I.     Since Plaintiff Lacks Sufficient Evidence To Prove Her Claims Of Disability Discrimination, Those Claims Should Be Dismissed ..................................................... 2

    II.    Since Plaintiff Lacks Sufficient Evidence To Prove Her Reasonable Accommodation Claims, Those Claims Should Be Dismissed .................................... 9

    III.   Since Plaintiff Lacks Sufficient Evidence To Prove Her Retaliation Claims, Those Claims Should Be Dismissed ........................................................................... 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assue v. UPS, Inc.*,
   16-CV-7629 (CS), 2018 WL 3849843 (S.D.N.Y. Aug. 13, 2018) ............................................6

*Brollosy v. Margolin, Winer & Evens, LLP*,
   4–CV–0873, 2006 WL 721433 (E.D.N.Y. March 20, 2006).....................................................8

*Brown v. Dep't of Educ. of City of New York*,
   10 Civ. 5023 (SHS), 2012 WL 1319859 (S.D.N.Y. April 11, 2012)...................................6, 13

*Fagan v. New York State Elec. & Gas Corp.*,
   186 F.3d 127 (2nd Cir. 1999)....................................................................................................8

*Flieger v. Eastern Suffolk BOCES*,
   693 Fed. App'x 14 (2nd Cir. 2017) (Summary Order) ..............................................................6

*Gambello v. Time Warner Comms., Inc.*,
   186 F. Supp.2d 209 (E.D.N.Y. 2002) .......................................................................................8

*Griffin v. Ambika Corp.*,
   103 F. Supp.2d 297 (S.D.N.Y. 2000)........................................................................................8

*Harding v. Wachovia Capital Markets, LLC*,
   10 Civ. 3496 (JPO), 2012 WL 4471543 (S.D.N.Y. Sept. 21, 2012), *aff'd,* 541
   Fed. App'x 9 (2nd Cir. 2013)....................................................................................................8

*Holleman v. Art Crating Inc.*,
   12 Civ. 2719 (VMS), 2014 WL 4907732 (E.D.N.Y. Sept. 30, 2014) .................................8, 12

*Lugo v. Le Pain Quotidien*,
   13–CV–6450 (JMF), 2015 WL 1808558 (S.D.N.Y. April 13, 2015)............................9, 13, 14

*Lukasiewicz–Kruk v. Greenpoint YMCA*,
   07 Civ. 2096 (ARR), 2009 WL 3614826 (E.D.N.Y. Oct. 30, 2009), *aff'd,* 404
   Fed. App'x 519 (2nd Cir. 2010).............................................................................................12

*McFarlane v. Chao*,
   04 CV 4871, 2007 WL 1017604 (S.D.N.Y. March 30, 2007).................................................14

*McGuire–Welch v. House of the Good Shepherd*,
   219 F. Supp.3d 330 (N.D.N.Y.), *appeal filed*, No. 16–4095 (2nd Cir. Dec. 7,
   2016) ........................................................................................................................................11

# TABLE OF AUTHORITIES *cont'd*

Page(s)

**Cases**

*Ramsaran v. Booz & Co. (N.A.) Inc.*,
    1:14–cv–708–GHW, 2015 WL 5008744 (S.D.N.Y. 2015) ................................................11, 13

*Schuler v. Dow Chemical Company*,
    14-CV-1043-MJR, 2018 WL 279286 (W.D.N.Y. Jan. 3, 2018)...............................................14

*Silver v. Entergy Nuclear Operations, Inc.*,
    290 F. Supp.3d 234 (S.D.N.Y. 2017).......................................................................................11

*Soderberg v. Gunther Intern., Inc.*,
    124 Fed. App'x 30 (2nd Cir. 2005).........................................................................................13

*Taylor v. Polygram Records*,
    94 Civ. 7689 (CSH), 1999 WL 124456 (S.D.N.Y. Mar. 8, 1999)...........................................10

*Testa v. CareFusion*,
    305 F. Supp.3d 423 (S.D.N.Y. 2018).........................................................................................7

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2nd Cir. 2000), *superseded by statute on other grounds as stated
    in Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp.2d 275 (S.D.N.Y.
    2006) ..........................................................................................................................................6

*Whethers v. Nassau Health Care Corp.*,
    956 F. Supp.2d 364 (E.D.N.Y. 2013), *aff'd,* 578 Fed. App'x 34 (2nd Cir.
    2014) ........................................................................................................................................10

*Wright v. Jewish Child Care Ass'n of New York*,
    68 F. Supp.3d 520 (S.D.N.Y. 2014).........................................................................................10

**ARGUMENT**

**PLAINTIFF HAS NOT MET HER BURDEN OF PRODUCING SUFFICIENT EVIDENCE ON WHICH A REASONABLE JURY COULD FIND THAT DEFENDANTS DISCRIMINATED AGAINST HER, DENIED HER A REASONABLE ACCOMMODATION, AND/OR RETALIATED AGAINST HER**

Plaintiff's opposition to Defendants' motion for summary judgment fails for one simple reason -- notwithstanding her self-serving self-assessment of her computer skills and performance, she does not have sufficient probative evidence on which a reasonable jury could find in her favor on any of her claims. Rather, her supposed evidence is weak at best and replete with surmise, conjecture, and speculation, and, therefore, is insufficient as a matter of law.

Once a defendant show a legitimate, non-discriminatory reason for an adverse action,

> "the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination. The plaintiff must 'produce not simply 'some' evidence, but '<u>sufficient</u> evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'' … In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, '[i]t is not enough ... to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination.'…"

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2nd Cir. 2000) (footnote, citations omitted, emphasis added), *superseded by statute on other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp.2d 275, 282–83 (S.D.N.Y. 2006); *Flieger v. Eastern Suffolk BOCES*, 693 Fed. App'x 14, 18 (2nd Cir. 2017) (Summary Order); *Assue v. UPS, Inc.*, 16-CV-7629 (CS), 2018 WL 3849843 *11 (S.D.N.Y. Aug. 13, 2018). To do so, the opposing party "'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence' in support of its factual assertions. ..." *Brown v. Dep't of Educ. of City of New York*, 10 Civ. 5023 (SHS), 2012 WL 1319859 *5 (S.D.N.Y. April 11, 2012) (citations omitted).

**I.    SINCE PLAINTIFF LACKS SUFFICIENT EVIDENCE TO PROVE HER CLAIMS OF DISABILITY DISCRIMINATION, THOSE CLAIMS SHOULD BE DISMISSED**

As described in her Memorandum of Law ("Plaintiff's Memo.") at 1-2, Plaintiff alleges seven facts which she contends are sufficient to enable a jury to find that Defendants' proffered reason for her termination, *i.e.*, her inability to learn and use the new dental practice computer software introduced by Defendants, is false and that the real reason was her disability:

- Plaintiff was able to learn and use the new computer software;

- There is no contemporaneous documentation of Plaintiff's supposed inability to perform her duties, but only self-serving testimony by Defendants' office manager and employee;

- Defendants did not warn Plaintiff about her job performance or discipline her;

- Plaintiff and another employee both had difficulty with the new computer software, both learned to use the software, only Plaintiff had a disability, and only Plaintiff was fired;

- Dr. DiCicco told Plaintiff that her "situation was not adaptable";

- Defendants terminated Plaintiff weeks after knowing she was unable to learn and use the software, but soon after she began medical leave for side effects of chemotherapy; and

- Defendants' reasons for terminating Plaintiff changed over time.

These allegations are not "sufficient" to allow a jury to rule in Plaintiff's favor.

Plaintiff's assertion that she successfully completed the computer software training is nothing more than a dispute of Defendants' evaluation of her performance and therefore is legally irrelevant. As Defendants pointed out, "[a]n employee's subjective disagreement with his manager's evaluation of his performance is not a viable basis for a discrimination claim. … Such beliefs cannot preclude summary judgement for 'it is the perception of the decision-maker, and not that of plaintiff, which is relevant.'" *Testa v. CareFusion*, 305 F. Supp.3d 423, 433-34 (S.D.N.Y. 2018) (citation omitted).

Plaintiff's second assertion, that the lack of contemporaneous documentary evidence of poor performance supports a finding of pretext, also is misplaced. First, courts in this District

2

have held that "[a] 'lack of contemporaneous documentation' is not, by itself, sufficient to demonstrate pretext. … In this case, no inference of discrimination or pretext is raised by Defendants' failure to document Plaintiff's infractions, as there is no evidence that Defendants documented any employee's misconduct." *Holleman v. Art Crating Inc.*, 12 Civ. 2719 (VMS), 2014 WL 4907732 *40 (E.D.N.Y. Sept. 30, 2014) (citation omitted); *Harding v. Wachovia Capital Markets, LLC*, 10 Civ. 3496 (JPO), 2012 WL 4471543 *9 (S.D.N.Y. Sept. 21, 2012), *aff'd,* 541 Fed. App'x 9 (2nd Cir. 2013) (where the defendant provided deposition testimony concerning the he specific reasons for the challenged hires, "[t]he fact that those reasons were not set forth in writing at the time of each promotion does not, by itself, establish pretext.").

Plaintiff's third assertion, that she never was told of her of her performance deficiencies, is not supported by the evidence and is legally irrelevant. Jessica Jones testified at Jones Tr. 69:

> "Q: Did you put anything in writing about her unsatisfactory work performance?
> A: No. Well, you know what, I want to clarify that because you're saying did I ever tell Anna Marie what she did wrong and yes, because every time that she needed -- I needed her to learn something, I remember I would tell her 'I need you to learn this. I need you to grasp this. I need you to focus on this. What is it that you don't understand,' so yes, I did."

In any event, although it would have been a better practice to provide written documentation of performance issues, it is nonetheless true that the defendant "still would be entitled to summary judgment because 'the fact that an employee was unaware of [his] employer's dissatisfaction is irrelevant to a court's inquiry on the issue.' *Griffin v. Ambika Corp.,* 103 F. Supp.2d 297, 310-11 (S.D.N.Y. 2000)." *Gambello v. Time Warner Comms., Inc.*, 186 F. Supp.2d 209, 222 (E.D.N.Y. 2002); *Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 134-35 (2nd Cir. 1999); *Brollosy v. Margolin, Winer & Evens, LLP*, 4–CV–0873 (DRH), 2006 WL 721433 *9 (E.D.N.Y. March 20, 2006).

Plaintiff also asserts that she and Michelle Smith were similarly situated in terms of their

position and performance, differed only in that she took medical leave for her disability, and only she was terminated. "'A plaintiff may support an inference of ... discrimination by demonstrating that similarly situated employees [outside his protected class] were treated more favorably,' but '[i]n order to make such a showing, the plaintiff must compare [him] self to employees who *are similarly situated in all material respects.*' … " Lugo v. Le Pain Quotidien, 13–CV–6450 (JMF), 2015 WL 1808558 *6 (S.D.N.Y. April 13, 2015) (citations omitted). In fact, however, Plaintiff and Ms. Smith were not similarly situated. First, Defendants had very different assessments of Plaintiff's and Ms. Smith's ability to learn and use the new computer software. Jones testified:

> A: … "I needed help in training Anna Marie, she was not getting our systems at all and I was dedicating a lot of time sitting next to Anna Marie going over the systems, showing her the systems, showing her how to insurance bill, showing her how to input information, showing her how to check in a patient because they had a very different style checking in patients, just showing her pretty much all the in and outs of the way our office was going to be running. I did it with her and I was doing it with Michelle, sat at the desk and Michelle was acing it, she was doing excellent.
> Q   Michelle Smith?
> A   Michelle Smith.
> Q   Okay.
> A   She was doing great, you know, going for it, she got everything. She was very quick on learning, adapting to the new systems, grasping everything I was telling her, pretty much ready and able, like she got it."

Jones Tr. 38-39. Then, when Ms. Smith's husband was ill, Defendants allowed her to take four months of medical leave to care for him. Plaintiff's Rule 56.1 Counter-Statement ¶ 144. The relevant distinction between lies in Defendants' differing assessments of their performance.

Plaintiff's contends that when Dr. DiCicco told Plaintiff that she was being let go and allegedly said that her "situation was not adaptable", he was referring to her disability and time off. Even if this comment was made, which Dr. DiCicco does not recall saying, DiCicco Tr. 103, it proves nothing. It is at least as likely, if not more, that "not adaptable" referred to Plaintiff's inability to adapt to Madison Dentistry's computer software and different operating procedures.

A similar situation was examined in *Wright v. Jewish Child Care Ass'n of New York*, 68 F. Supp.3d 520 (S.D.N.Y. 2014). There, the plaintiff claimed that she was informed "that she had not passed probation because she was not 'suitable' and did not 'fit' the program, phrases Wright believes to have been racially motivated. …" *Id.* at 526. The Court held that "[t]hese two racially neutral remarks alone are inadequate to support an inference of discrimination." *Id.* at 526-27; *Whethers v. Nassau Health Care Corp.,* 956 F. Supp.2d 364, 380 (E.D.N.Y. 2013), *aff'd,* 578 Fed. App'x 34 (2nd Cir. 2014); *Taylor v. Polygram Records,* 94 Civ. 7689 (CSH), 1999 WL 124456 *17 (S.D.N.Y. Mar. 8, 1999). The Court then held that "[f]or the same reasons …, it is inadequate to support a finding of pretext sufficient to overcome JCCA's stated justification: namely, the two remarks made at Wright's termination alone provide far too meager evidence of race-based thinking …. *Id.* at 529.

Plaintiff also takes issue with the timing of Plaintiff's termination, which occurred weeks after Defendants concluded that she was unable to learn and use the computer software, but soon after she began taking sick days for the side effects of her chemotherapy. Dr. DiCicco, however, wanted to give Plaintiff more time and more of an opportunity to show that she could learn and use the computer software. Defs.' Rule 56 Statement ¶ 53. He then approved the temporary hiring of Carolina Salcedo to exclusively work with Plaintiff in order to give her the time and opportunity to become comfortable using the different systems. *Id.*

Plaintiff also attempts to create the impression that she was the only person whose employment with Madison Dentistry was terminated, and there it must have been on account of her disability. This is not true. Cathy Quinn and Anna Freer also were terminated, in June or July 2017, and for similar reasons as Plaintiff. *See* Taubenfeld Dec., Plaintiff's Exhibit "2", Interrogatory Nos. 2 and 11; Jones Tr. 130. Neither had a disability. Scorsonelli Tr. 140.

5

Plaintiff's temporal proximity argument has a weak legal and factual basis. "'While timing may be sufficient to establish an inference of discrimination' …, 'the close proximity of a termination to the plaintiff's announcement of her pregnancy alone is insufficient to demonstrate a pretext.' ... Neither the temporal proximity of plaintiff's announcement of her pregnancy to her termination, nor the temporal proximity of plaintiff's pregnancy-related disability leave to her termination, are sufficient on their own to support a finding of pretext." *Ramsaran v. Booz & Co. (N.A.) Inc.*, 1:14–cv–708–GHW, 2015 WL 5008744 *12 (S.D.N.Y. 2015) (citations omitted). Moreover, the facts underlying this assertion also are rebutted by Plaintiff's insistence that Jessica Jones knew of Plaintiff's cancer diagnosis and chemotherapy treatments at least as early as February 2017. *See* Scorsonelli Dec. ¶¶ 4-6. Moreover, when Scorsonelli needed a hotel room so that she could get to her first chemotherapy treatment in March 2017, it was Jones who arranged for the room for her, an act not at all consistent with someone who would later discriminate on account of that medical condition. *Id.* at ¶ 7.

In addition, although it might have been preferable for Defendants to wait until Plaintiff returned to work before terminating her employment, "an employer … has no obligation to be compassionate, and its failure to be so is not evidence of pretext." *Silver v. Entergy Nuclear Operations, Inc.*, 290 F. Supp.3d 234, 249 (S.D.N.Y. 2017); *McGuire–Welch v. House of the Good Shepherd*, 219 F. Supp.3d 330, 347 (N.D.N.Y.) (although "[t]he manner in which McGuire–Welch was terminated by defendants was certainly handled very poorly", conducting that termination without "an appropriate degree of compassion and understanding" did not constitute employment discrimination), *appeal filed*, No. 16–4095 (2nd Cir. Dec. 7, 2016).

Finally, Plaintiff contends that Defendants' reason for Plaintiff's termination changed over time. In fact, however, there was no waffling as to the reason why Plaintiff's employment

6

was terminated. From Dr. DiCicco's alleged statement that Plaintiff's situation was not "adaptable" because of her inability to adapt to new technology and office procedures, to the Interrogatory Answer referring to "significant difficulty with the training and new practices/procedures", s*ee* Taubenfeld Dec., Plaintiff's Exhibit "2", Interrogatory No. 2, to another Interrogatory Answer referring to "[n]umerous reasons, including but not limited to: general performance issues; duplication of duties; cost effectiveness; failure to learn the updated technology and new office protocol", *id.* at Interrogatory No. 11, to Dr. DiCicco's and Jessica Jones' deposition testimony about Plaintiff's poor job performance, DiCicco Tr. 18-19; Jones Tr. 43-45, 49, 69-70, 73-74, and 74-75, and finally to Defendants' focus in this motion on Plaintiff's poor job performance and inability to learn and use the new computer software, Defendants consistently have pointed to Plaintiff's job performance as the reason for her termination.

"In the absence of other evidence of discrimination, courts have not found an inference of discrimination or pretext where '[t]he multiple reasons defendant raised for [the adverse action] are not conflicting, but complementary'" and "'[i]nconsistencies in a defendant's reasons for an adverse action must be 'material' and not 'minor' to raise a triable factual dispute." *Holleman*, 2014 WL 4907732 *37-38, citing *Dister v. Cont'l Grp., Inc.,* 859 F.2d 1108, 1116 (2nd Cir. 1988); *Lukasiewicz–Kruk v. Greenpoint YMCA,* 07 Civ. 2096 (ARR), 2009 WL 3614826 *9–10 (E.D.N.Y. Oct. 30, 2009), *aff'd,* 404 Fed. App'x 519 (2nd Cir. 2010).

Plaintiff's claims also are based on her conjecture and surmise. Thus, she testified:

"Q. When he said, it wasn't an adaptable situation, did you have an understanding of what he meant by that?
A. I guess my being sick wasn't adaptable to the office. My being out because 1 had cancer.
Q. Did he say that?
A. No, but <u>how else would I interpret that</u>?"

Scorsonelli Tr. 84-85 (emphasis added). Later, Plaintiff testified at Scorsonelli Tr. 115-16:

7

> "Q. … What is the basis for your belief that when he said, the situation was not adaptable, he was referring to your disability and medical leave?
> A. I guess because of my cancer.
> Q. How do you know that that's what he was referring to?
> A. What else could he have been referring to?
> Q. Your job performance perhaps?
> A. Never said that.
> Q. Did he say that he was referring to your cancer?
> A No.

Courts have found such testimony unavailing. In *Soderberg v. Gunther Intern., Inc.*, 124 Fed. App'x 30, 33 (2nd Cir. 2005) (citations omitted), the Court noted that plaintiff's deposition testimony "essentially conceded that her sole basis for charging defendant with discriminatory discharge was that, to her own mind, no other reason could explain her termination. Such 'conjecture or surmise,' however, does not constitute admissible evidence sufficient to establish a material issue of fact on the issue of defendant's discriminatory intent." *See also Brown*, 2012 WL 1319859 *6 (the plaintiff's "perceptions of what Jamison and Ianniello were thinking" did not provide the jury with a "factual basis on which it could substantiate Brown's guesswork, so her beliefs cannot demonstrate pretext."); *Ramsaran*, 2015 WL 5008744 *12 ("[i]f a bare affirmation that a plaintiff 'felt discriminated against' was sufficient to defeat summary judgment, summary judgment in employment discrimination cases would be rare.").

In *Lugo*, 2015 WL 1808558 *4 (citations omitted), the Court held that "Plaintiff's discrimination claims under Title VII and the ADEA fail for the simple reason that there is no evidence to support an inference of discrimination. … And Plaintiff's conclusory assertions aside, there is not a scintilla of evidence that Jimenez was hostile *because* of Plaintiff's race, national origin, or age. …" The Court then observed that, "Plaintiff's claims would fail at the third stage of the *McDonnell Douglas* analysis for largely the same reasons. That is, LPQ has indisputably proffered a legitimate, non-discriminatory reason for Plaintiff's termination ….

8

Under *McDonnell Douglas,* 'the burden would thus shift back to Plaintiff, who would have to show—without the presumption of discrimination generated by the *prima facie* case—that Defendant's proffered reason is a mere pretext for discrimination.' … Plaintiff has failed to do so." *Id.* at *4 n.1 (citation omitted). The same holds true here.

## II.   SINCE PLAINTIFF LACKS SUFFICIENT EVIDENCE TO PROVE HER REASONABLE ACCOMMODATION CLAIMS, THOSE CLAIMS SHOULD BE DISMISSED

Plaintiff contends that she made a request for a reasonable accommodation by telling her co-worker, Michelle Smith, who she regarded as her supervisor, on a daily basis that she was ill and was not coming to work. Plaintiff does not allege any facts whether she provided the specifics of a request for accommodation to Smith, and whether she told Smith to inform Jones or Dr. DiCicco. Therefore, Plaintiff did not make a alid request for a reasonable accommodation.

Plaintiff contends that her taking sick days was a request for a reasonable accommodation. Plaintiff, however, never provided any specifics regarding what specific accommodation she was requesting, for what period of time, when she would notify Defendants that she was unable to come to work on any specific day, and whether she would need the accommodation each time she had a chemotherapy treatment. Thus, although it is true that "[a] defined leave of absence frequently constitutes a reasonable accommodation …, an employer is not required to grant an employee an indefinite leave of absence." *McFarlane v. Chao*, 04 CV 4871 (GBD), 2007 WL 1017604 *17 (S.D.N.Y. March 30, 2007) (citations omitted). In addition, with Plaintiff's apparent proposed accommodation, she would not be able to perform the essential functions of her position since she would not be at work. *Schuler v. Dow Chemical Company*, 14-CV-1043-MJR, 2018 WL 279286 *7 (W.D.N.Y. Jan. 3, 2018) (citations omitted).

Moreover, Defendants permitted Plaintiff to take the time off from work when she had the side-effects of her chemotherapy. Thus, the only act that could be a denial of a reasonable

accommodation was the termination of her employment. These claim are nothing more than recast discriminatory termination claims, which fail for the same reasons as those claims.

### III. SINCE PLAINTIFF LACKS SUFFICIENT EVIDENCE TO PROVE HER RETALIATION CLAIMS, THOSE CLAIMS SHOULD BE DISMISSED

Plaintiff also argues that Defendants' proffered reason for terminating her employment is pretextual and that an additional reason for the termination of her employment was to retaliate against her for taking sick days due to the side-effects of her chemotherapy.

Plaintiff has even less evidence to rely upon in her attempt to show that a jury could find in her favor on her retaliation claim. Since Plaintiff's alleged protected activity was the taking of sick days in late April and May 2017, the only fact that is relevant to her claim of retaliation for the exercise of that protected activity is the termination itself, since all of the other facts took place prior to the alleged protected activity. The single fact of termination is not sufficient evidence of retaliation. If it were, summary judgment never would be granted.

### CONCLUSION

For the reasons stated previously and herein, Defendants respectfully request that the Court: (1) grant their motion for summary judgment; (2) dismiss this action in its entirety; and (3) grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

| **SEYFARTH SHAW LLP** | **HANNA LAW GROUP** |
|---|---|
| By: *s/ Frederic L. Lieberman*<br>Frederic L. Lieberman<br>Karen Y. Bitar<br>620 Eighth Avenue<br>New York, NY 10018<br>Tel: (212) 218-5575<br>E-Mail: flieberman@seyfarth.com | By: *s/ Gary E. Hanna*<br>Gary E. Hanna<br>8410 Third Avenue<br>Brooklyn, New York 11209<br>Tel: (718) 232-3001<br>E-Mail: garyhannalaw@gmail.com |

Dated: New York, New York
April 18, 2019

*Attorneys for Defendants Madison Dentistry, P.C. and Frank DiCicco*